## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

ROSETTA D. LEEPER,

    **Plaintiff,**

 v.

HEALTHSCOPE BENEFITS, *et. al.*,

    **Defendants.**

Case No. 2:19-cv-5401
**JUDGE EDMUND A. SARGUS, JR.**
**Magistrate Judge Chelsey M. Vascura**

### <u>OPINION & ORDER</u>

Defendants HealthScope Benefits ("HealthScope"), Eric Moore, Suzanne Penney, Wanda Elmore, Hawitha Richardson, and Tangelena Harmon (collectively "Defendants") have filed a Motion to Dismiss (ECF No. 4). Plaintiff Rosetta D. Leeper ("Plaintiff") has filed a response (ECF No. 5) and Defendants have filed a reply (ECF No. 6). For the reasons stated herein, Defendants' Motion to Dismiss (ECF No. 4) is **GRANTED.**

### I.

This action was removed to this Court on December 10, 2019. (*See* Notice Removal, ECF No. 1.) Plaintiff, proceeding pro se, filed an amended complaint on December 11, 2019. (*See* Am. Compl., ECF No. 3.) As this matter is before the Court on the Defendants' Motion to Dismiss, the allegations in the Complaint are taken as true and are as follows:

Plaintiff began working for HealthScope through "employment solutions temporary service" in June of 2017. (Am. Compl. at 2.) Wanda Elmore, HealthScope's director of customer service, hired Plaintiff full-time on September 5, 2017, as a call audit representative. (*Id.*) At all relevant times Plaintiff's direct supervisor was Hawitha Richardson. (*Id.* at 4.) Shortly after Elmore hired Plaintiff, HealthScope hired Tangelena Harmon as a call audit representative. (*Id.*

at 3.) HealthScope quickly made Harmon a supervisor over the call audit department. (*Id.*)

HealthScope has an employee handbook (the "Employee Handbook") which contains HealthScope's policies, such as: its employment of non-discriminatory practices, its procedure for corrective action, its goal of promoting a productive work-place environment and complying with the law, and its open-door policy. (Employee Handbook at 5–6, 15, 24, ECF No. 7.)

On December 6, 2017,[1] and December 8, 2017, Harmon withdrew points from Plaintiff's call audits for "heavy breathing." (Am. Compl. at 3.) Plaintiff verbally complained to Richardson that Plaintiff had asthma and used an inhaler. (*Id.* at 4–5.) Richardson coached Plaintiff to move her mouthpiece during heavy breathing. (*Id.*) Subsequent to Plaintiff's complaint, Harmon stopped withdrawing points for heavy breathing, but the points already withdrawn affected Plaintiff's bonus. (*Id.*) Plaintiff asked Richardson to reassign her to another supervisor. (*Id.*) Richardson denied the request. (*Id.*)

In April of 2018, Plaintiff's co-worker Dan Gannon stood by Plaintiff's desk to ask her a question. (*Id.*) Plaintiff told Gannon she was on her break and would help him after her break. (*Id.*) Gannon refused to leave and became aggressive. (*Id.*) Plaintiff reported this to Richardson who said "that is just how Dan is. He is abrasive." (*Id.*) Plaintiff told Richardson she suffered from post-traumatic stress disorder and severe anxiety disorder and thus, Richardson needed to tell Gannon to stop. (*Id.* at 9.) Richardson told Plaintiff to go to the meditation room. (*Id.*)

On April 2, 2018, Harmon withdrew points from Plaintiff's call audit because Plaintiff used the mute button to cough and use her inhaler. (*Id.* at 10.) Plaintiff again asked Richardson to reassign her to another supervisor and Richardson refused. (*Id.*)

---

[1] Plaintiff states this as December 6, 2018, but because Plaintiff no longer worked for HealthScope on that date the Court believes this was an error. Plaintiff alleges this occurred "immediately after codefendant Tangelena Harmon became the call audit supervisor." (Am. Compl. at 3.) Thus, it likely occurred in 2017 instead of 2018.

On May 18, 2018, Harmon yelled to Plaintiff from across the hallway that Plaintiff was rude because she failed to say good morning. (*Id.* at 11.) Plaintiff felt the encounter was aggressive and startling. (*Id.* at 12.) Plaintiff reported the incident to Richardson who did not believe her. (*Id.* at 11, 14.) Richardson directed Plaintiff to speak to Curtis Smith, Richardson's supervisor, who directed Plaintiff to speak to Elmore. (*Id.*) Plaintiff emailed Elmore and requested a time to discuss the incident. (*Id.*) Elmore did not file any complaints on Plaintiff's behalf, ask about Plaintiff's disability, or make accommodations for Plaintiff's disability. (*Id.* at 20.)

On July 12, 2018, Plaintiff was in HealthScope's women's restroom standing in front of a full-length mirror. (*Id.* at 16.) Harmon exited one of the restroom's stalls and stood behind Plaintiff, staring at her in the mirror. (*Id.*) Plaintiff exited the restroom. (*Id.*) Thirty minutes later, Richardson stated Elmore wanted to speak with Plaintiff because Harmon was claiming Plaintiff harassed her. (*Id.* at 29–30.) Plaintiff began having an asthma attack and a panic attack. (*Id.*)

The same day, Elmore told Plaintiff she had to talk to HealthScope's in-house counsel Eric Moore. (*Id.* at 35.) Plaintiff refused and told Elmore she was exercising her Fifth Amendment right. (*Id.* at 36.) Eventually, Plaintiff called Moore who advised her he was strictly counsel for HealthScope. (*Id.*) Plaintiff refused to speak to Moore any further. (*Id.*)

On July 18, 2018, Darren Asheby, HealthScope's vice president of operations, told Plaintiff he was writing her up for harassing Harmon. (*Id.*) Ashbey told Plaintiff she had to speak to Moore. (*Id.* at 37.) Plaintiff refused and began to have a panic attack. (*Id.*) Shortly after, Ashbey advised Plaintiff he terminated her employment with HealthScope because she failed to cooperate with an investigation. (*Id.* at 37.)

Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC"). (*Id.* at 39.) On August 1, 2019, Plaintiff received a right to sue letter. (*Id.*) Since

Plaintiff's termination from HealthScope, she has not had full-time employment. (*Id.*)

Plaintiff brings five claims against Defendants: (1) defamation; (2) violation of the Fifth Amendment; (3) breach of contract; (4) hostile work environment under the Americans with Disabilities Act ("ADA") and Ohio law; and (5) wrongful termination based on discrimination and retaliation under the ADA and Ohio law. [2] Defendants move to dismiss all claims under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted and 12(b)(5) for insufficient service of process. (Defs.' Mot. Dismiss at 1, ECF No. 4.)

## II.

Federal Rule of Civil Procedure 12 authorizes dismissal of a lawsuit for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To meet this standard, the complaint must allege sufficient facts to state a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In considering a Rule 12(b)(6) motion to dismiss, the Court construes the complaint in the light most favorable to the non-moving party, accepting as true all of plaintiff's factual allegations. *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009).

Nonetheless, the Court must read Rule 12(b)(6) in conjunction with Federal Rule of Civil Procedure 8(a), requiring a short and plain statement of the claim showing that the plaintiff is entitled to relief. *Ogle v. BAC Home Loans Servicing LP*, 924 F. Supp. 2d 902, 907 (S.D. Ohio 2013). Thus, the pleading's factual allegations, assumed to be true, must do more than create mere speculation or suspicion of a legally cognizable claim; they must show entitlement to relief.

---

[2] Plaintiff's Complaint is not entirely clear as to what claims are being brought. The Court construes the Complaint liberally because Plaintiff is pro se. *Frengler*, 482 F. App'x at 976.

*League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007). Further, "the tenet that courts must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 662. As such, while a plaintiff is not required to set forth detailed factual allegations at the pleading stage, a complaint must contain a basis upon which relief can be granted; a recitation of facts intimating the "mere possibility of misconduct" will not suffice. *See id.* at 679; Fed. R. Civ. P. 8(a).

Moreover, courts are called to "liberally construe pro se complaints and hold such complaints to a less stringent standard than pleadings prepared by attorneys." *Frengler v. Gen. Motors*, 482 F. App'x 975, 976 (6th Cir. 2012) (citing *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)). However, such "lenient treatment has limits" and courts "should not have to guess at the nature of the claim asserted . . . ." *Id.* at 977 (internal quotations omitted).

### III.

Defendants move to dismiss all claims under Rule 12(b)(6).

#### A. Defamation

Plaintiff alleges Defendants defamed her character in violation of Ohio Revised Code § 2739.01. (Am. Compl. at 2.) Plaintiff contends Harmon's statement to Elmore that Plaintiff harassed her was defamatory. (*Id.* at 30.) Plaintiff alleges that Harmon, "who had been harassing [Plaintiff] for months with no repercussions [whatsoever], now stated she felt harassed while standing behind [Plaintiff] blatantly staring at her in the [] restroom mirror." (*Id.*) Plaintiff argues that this defamed her character and as a result her "reputation was damaged" which "hinder[ed] her ability to secure fulltime employment with benefits." (*Id.* at 39.)

Additionally, in Plaintiff's response to Defendants' motion, she asserts additional defamation occurred when Harmon submitted an affidavit to the EEOC stating "Plaintiff blocked the door and prevented her from leaving the women's restroom." (Pl.'s Resp. at 5.) Further, Plaintiff argues the defamatory statements are ongoing as "Defendants continue[] to communicate [the defamatory statements] to the Ohio Unemployment [O]ffice in an unsuccessful attempt to prevent [] Plaintiff from receiving unemployment benefits." (*Id.*) Plaintiff also argues her claim is timely because the statute of limitations was tolled when she submitted her claim to the EEOC and resumed when she received her right to sue letter. (*Id.* at 4–5.)

Defendants move to dismiss the claim because the statute of limitations has expired. (Defs.' Mot. Dismiss at 4–5.) Further, Defendants argue Plaintiff cannot rely on claims not in her Amended Complaint and statements made to the EEOC are privileged. (Defs.' Reply at 3–4.)

Ohio Revised Code § 2305.11(A) provides that an action for libel or slander "shall be commenced within one year after the cause of action accrued." "[T]he statute of limitations begins to run when the allegedly defamatory words are first spoken or published regardless of the aggrieved party's knowledge of them." *Friedler v. Equitable Life Assurance Soc'y of the United States*, 86 F. App'x 50, 52 (6th Cir. 2003) (citing *Sabouri v. Ohio Dep't of Job & Family Servs.*, 763 N.E.2d 1238, 1240–41 (Ohio Ct. App. 2001)); *Kontar v. Am. Geophysical Union*, No. 16-3491, 2017 WL 3402068, at *2 (6th Cir. Jan. 5, 2017) ("For a slander claim, the cause of action accrues at the time the defamatory words are spoken [and] [f]or a libel claim the cause of action accrues at the time the defamatory written words are published.").

"[T]he defense of the statute [of limitations] may be raised on a motion to dismiss under Rule 12(b)(6) when it is apparent from the face of the complaint that the time limit for bringing the claim has passed." *Hoover v. Langston Equip. Ass'ns*, 958 F.2d 742, 744 (6th Cir. 1992).

Plaintiff alleges Harmon's first defamatory statement was on July 18, 2018. (Am. Compl. at 16–30.) Any claim based on this statement needed to be filed by July 18, 2019. *See* OHIO REV. CODE § 2305.11(A); *Friedler*, 86 F. App'x at 52; *Kontar*, 2017 WL 3402068 at *2. The Complaint was filed on December 10, 2019, and thus, the claim is time barred unless tolled.

This Court has previously recognized that while the Sixth Circuit has not addressed the issue of whether the statute of limitations for state law claims are tolled pending the EEOC's consideration of a charge of discrimination, other circuits have. *Jeffrey-Wolfert v. UC Health*, No. 1:16CV656, 2017 WL 590269, at *3 (S.D. Ohio Feb. 14, 2017). In *Jeffrey-Wolfert v. UC Health*, this Court relied on the Second Circuit Case *Castagna v. Luceno*, 744 F.3d 254 (2d Cir. 2014), and held the statute of limitations of a state law claim is not tolled pending the EEOC's consideration of a charge of discrimination. *Id.* at *4.

In *Castagna v. Luceno*, the Second Circuit found "there [was] no basis for concluding that Congress intended that a civil rights claimant should be entitled to delay filing any state tort claims during the EEOC's consideration of a charge of discrimination." 744 F.3d at 258. The Second Circuit rejected the Plaintiff's judicial economy argument. *Id.*

As this Court in *Jeffrey-Wolfert*, and the Second Circuit in *Castanga*, noted, this conclusion is consistent with the Supreme Court's decision in *Johnson v. Railway Express Agency Inc.*, 421 U.S. 454 (1975). In *Johnson*, the Supreme Court held the filing of an EEOC charge does not toll the statute of limitations for an action based on the same facts initiated under 42 U.S.C. § 1982. *Id.* at 455. The Supreme Court explained that the legislative history of Title VII shows congressional intent to allow an individual to pursue rights under Title VII as well as rights under other applicable statutes, including tort claims. *Id.* at 455–56. Thus, the Supreme Court found tolling inappropriate when there were two separate statutes with two separate remedies. *Id.* at 465.

7

Other circuit courts, as well as district courts in our circuit, have also held tolling inapplicable to claims brought under the same set of facts as claims that begin in the EEOC. *See Juarez v. Ameritech Mobile Commc'ns, Inc.*, 957 F.2d 317, 322–23 (7th Cir. 1992) (holding the statute of limitations for a state-law invasion of privacy claim is not tolled by the filing of a discrimination charge with the EEOC); *Arnold v. United States*, 816 F.2d 1306, 1312–13 (9th Cir. 1987) (holding the statute of limitations for state law claims of assault, battery, false imprisonment, and intentional infliction of emotional distress are not tolled by the filing of a charge of discrimination with the EEOC); *Macklin v. Turner*, No. 1:03CV2347, 2005 WL 2211170, at *3 n.1 (N.D. Ohio Sept. 9, 2005) (holding the statute of limitations for the plaintiff's state law discrimination claim was not tolled pending the EEOC claim because the state statute did not contain tolling language and thus, the court assumed Ohio legislators did not contemplate tolling); *Roan v. Ensminger*, 294 F. Supp. 3d 758, 767 (M.D. Tenn. 2018) (noting the filing of an EEOC charge does not toll the one-year statute of limitations governing Tennessee torts).

Thus, this Court once again finds the Second Circuit's opinion in *Castagna* persuasive and reaches the same conclusion. The statute of limitations on Plaintiff's defamation claim was not tolled by the filing of the EEOC charge, and thus, the defamation claim is time barred.

Plaintiff, in her response, also provides a new defamatory statement not alleged in the Complaint. (Pl.'s Resp. at 5.) Plaintiff refers to Harmon's affidavit submitted to the EEOC, stating that Plaintiff blocked the door to the restroom and preventing Harmon from leaving. (*Id.*) Plaintiff alleges "[t]his is completely false and constitutes a completely new gross defamation of character accusation." (*Id.*) As Defendants point out, however, even if the Court did consider this statement, which was not alleged in the Amended Complaint, it too is time barred. Plaintiff alleges Harmon

gave this statement on August 28, 2018. The claim was required to be filed by August 28, 2019, and it was not filed until December of 2019.

Finally, Plaintiff alleges in her response that her claim for defamation is not time-barred because the continued communication of defamatory statements to the Ohio Unemployment Office constitutes "ongoing defamation of the Plaintiff['s] character." (*Id.* at 5–6.) Plaintiff does not allege anything related to the Ohio Unemployment Office in her Amended Complaint. "The district court, in reviewing a motion to dismiss, may not consider matters beyond the complaint." *Kostrzewa v. City of Troy*, 247 F.3d 633, 643 (6th Cir. 2001) (finding the district court, in deciding a motion to dismiss, erred when it considered a fact stated only in the memorandums attached to the parties' motions but stated nowhere in the complaint); *Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 576 (6th Cir. 2008) ("When reviewing a motion to dismiss, a district court may not consider matters beyond the complaint . . . [i]f the district court considers evidence outside of the complaint, it effectively converts the motion to dismiss to a motion for summary judgment.").

Thus, the Court will not consider Plaintiff's assertion that there has been ongoing defamation regarding statements made to the Ohio Unemployment Office for even construing the Amended Complaint liberally it is not asserted in the Amended Complaint. *Frengler*, 482 F. App'x at 976 (instructing courts to construe pro se complaints liberally).

Defendants' motion to dismiss Plaintiff's claim of defamation is GRANTED.

## B. Fifth Amendment Violation

Plaintiff alleges Defendants' violated her Fifth Amendment right when she was fired from her job for refusing to speak with Eric Moore, HealthScope's in-house counsel, about the incident

with Harmon in the restroom.[3] (Am. Compl. at 35–37.) Defendants move to dismiss this claim arguing she has not alleged state action. (Defs.' Mot. Dismiss at 5.) Plaintiff, in her response, alleges she must be allowed to invoke her Fifth Amendment right because Moore committed the unauthorize practice of law. (Pl.'s Resp. at 1–4.)

The Fifth Amendment to the Constitution provides that "[n]o person shall be . . . compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law . . . ." U.S. CONST. amend V. The Supreme Court has stated:

> The [Fifth] Amendment not only protects the individual against being involuntarily called as a witness against himself in a criminal prosecution but also privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings.

*Lefkowitz v. Turley*, 414 U.S. 70, 77 (1973). "Accordingly, under the Fifth Amendment, an individual cannot be compelled by a *governmental authority* to answer questions or otherwise produce evidence." *In re West*, 719 F. App'x 485, 491 (6th Cir. 2017) (emphasis added).

Plaintiff has not alleged that HealthScope or any of the other defendants are state actors and thus, has failed to allege she was compelled by governmental authority to answer questions. HealthScope is a private entity, not a government entity. Moore works for HealthScope. The Complaint contains no facts which could be construed as alleging HealthScope is a governmental entity. Thus, Plaintiff's Fifth Amendment rights are not implicated.

Plaintiff's argument that Moore is guilty of the unauthorized practice of law in violation of the Ohio Rules of Professional Conduct does not save this claim from dismissal. (*See* Pl.'s Resp. at 1–4.) Plaintiff did not plead this allegation in her Amended Complaint. Even if the Court did

---

[3] Plaintiff alleges on one page of her Amended Complaint that this also violates her rights under Ohio Revised Code § 3901.23. While this section does talk about self-incrimination, this section applies to insurance investigations and thus, is inapplicable in this case. *See* OHIO REV. CODE TITLE 39.

consider this argument, the Court cannot entertain this claim because the Supreme Court of Ohio has the exclusive jurisdiction to regulate the unauthorized practice of law. *Disciplinary Counsel v. Schroeder*, 91 N.E.3d 743, 745 (Ohio 2017); *see also* Ohio Const. art. 4, § 2(B)(1)(g) (giving the Supreme Court of Ohio original jurisdiction over "[a]dmission to the practice of law, the discipline of persons so admitted, and all other matters relating to the practice of law").

The Defendants' motion to dismiss the Fifth Amendment claim is GRANTED.

## C. Breach of Contract

Plaintiff claims that because Elmore failed to file Plaintiff's complaints, document Plaintiff's disability, ask for proof of Plaintiff's disability, or make an arrangement for Plaintiff's disability, Elmore "failed to follow the Health[S]cope [] Employee [H]andbook, thereby causing a breach of contract between HealthScope [] and [] Plaintiff." (Am. Compl. at 20–21, 23, 32.) Additionally, Plaintiff states that she and Elmore signed a legally binding contract, her offer letter, on August 30, 2017. (*Id.* at 23.) Finally, Plaintiff claims Defendants' breached a contract, the Employee Handbook, when they discriminated against her based on her disability. (*Id.*)

To succeed on a claim for breach of contract an employee "'must show: (1) the existence of a binding contract,' (2) performance of the contract by the employee, (3) breach of the contract by the employer, and (4) damage to the employee caused by the employer's breach." *Godfrey v. Mastec, Inc.*, No. 1:15-cv-409, 2015 U.S. Dist. LEXIS 159259, at *11–12 (S.D. Ohio Nov. 25, 2015) (citing *Mers v. Dispatch Printing Co.*, 483 N.E.2d 150, 154 (Ohio 1985)). Ohio case law regarding employment contracts contains "a strong presumption in favor of a contract terminable at will unless the terms of the contract or other circumstances clearly manifest the parties' intent to bind each other." *Mers*, 483 N.E.2d at 153 n.1. Generally, employment contracts are "terminable at the will of either party." *Id.*

"[E]mployee handbooks are not in and of themselves a contract of employment." *White v. Honda of Am. Mfg.*, 653 N.E.2d 381, 384 (Ohio 1995). "Employee handbooks . . . have been recognized in some situations as comprising components or evidence of the employment contract." *Id.*; *Mers*, 483 N.E.2d at 153. Handbooks which contain language specifically disclaiming any intent to create a contractual relationship, however, are not contracts. *See Karnes v. Doctors Hosp.*, 555 N.E.2d 280, 282 (Ohio 1990) ("The manual specifically disclaims any intent to create a contractual relationship . . . [a]ccordingly, the status of appellant cannot be characterized as that of a contract employee); *Finsterwald-Maiden v. AAA Central Ohio*, 685 N.E.2d 786, 789 (Ohio Ct. App. 1996) (finding that "the disclaimer alone constitutes competent, credible evidence to support a finding of no mutual assent to form a contract."); *Terrel v. Uniscribe Pro'l Servs.*, 348 F. Supp. 2d 890, 894 (N.D. Ohio 2004) ("[S]everal Ohio courts have refused to allow [employee] handbooks to transform at will employment into a contractual relationship when the handbook specifically disclaims any intent to create a contractual relationship.").

Similarly, "Ohio appellate courts considering breach of contract claims based upon an offer letter indicating at-will employment, have found that an indication of the duration of the expected employment is necessary" in order for the offer letter to constitute a contract. *Godfrey*, 2015 U.S. Dist. LEXIS 159259 at *12. When an offer letter does not indicate a specific duration of employment and instead indicates the relationship is to be at-will, the offer letter does not create a binding contract. *Id.* at *13.

Beginning with the Employee Handbook, Plaintiff argues that "when [Defendants] added specific laws to their employee handbook and promised to protect the Plaintiff from any and all law breakers whether employed by Health[S]cope [] or not[,] [t]he [Employee Handbook] became a contract." (Pl.'s Resp. at 7.) In support of this argument Plaintiff relies on Ohio Revised Code

§§ 4112.02 and 1513.39. Defendants argue the Employee Handbook was not a contract. (Defs.' Mot. Dismiss at 6–7.)

The Court starts with the presumption that Plaintiff's employment with HealthScope was at-will. *See Mers*, 483 N.E.2d at 151 n.1. Plaintiff argues this status was altered by the Employee Handbook which created a contract. Thus, the Court looks to see whether the Employee Handbook contains evidence of a contract. *Id.* On the contrary, the Employee Handbook contains a provision stating that it, "should not be regarded as, and is not in fact, a promise to provide specific terms and conditions of employment and is not, by expression or implication, a contractual agreement between the associate and the Company." (Employee Manual at 5.) The Employee Manual also states it, "other policies, procedures, handbooks, general information, or any other correspondence, written or oral, do not, in any way, constitute an express or implied employment contract or any agreement of employment for a specific period of time between the Company and any associate." (*Id.*) Thus, according to Ohio law, the Employee Handbook is not a contract due to the specific language disclaiming an intent to create a contractual relationship. *See Karnes*, 555 N.E.2d at 282; *Finsterwald-Maiden*, 685 N.E.2d at 789; *Terrel*, 348 F. Supp. 2d at 894.

Plaintiff's argument that the inclusion of specific laws in the Employee Handbook transforms the Employee Handbook into a contract is without support. Ohio Revised Code § 4112.02, laying out unlawful discriminatory practices, is relevant to a discrimination claim, but does not revive a breach of contract claim. Similarly, Ohio Revised Code 1513.39, prohibiting retaliation against an employee, may be relevant to a discrimination claim, but does not revive a breach of contract claim. Plaintiff cannot maintain a breach of contract action by arguing the Employee Handbook is the contract that was breached.

Turning to Plaintiff's offer letter, it states "this offer is made, and is not and shall not be construed as an agreement guaranteeing employment or in any manner altering the employment at-will relationship." (Offer Letter at 2, ECF No. ECF 1.) Additionally, the offer letter does not provide for a duration of employment. (*See id.*) Thus, the offer letter does not create a contract, and Plaintiff cannot maintain a breach of contract claim by arguing the contract that was breached was the offer letter. *See Godfrey*, 2015 U.S. Dist. LEXIS 159259 at *12–13.

Plaintiff has not alleged the first element of a breach of contract claim, the existence of a contract. *Id.* at *12. Accordingly, Defendants' motion to dismiss Plaintiff's claim for breach of contract is GRANTED.

### D. Hostile Work Environment

Plaintiff alleges Defendants' harassment created a hostile work environment. Plaintiff alleges: (1) Harmon harassed Plaintiff by taking points off her calls for heavy breathing; (2) Richardson harassed Plaintiff by advising her to pull her mouth piece up; (3) Harmon harassed Plaintiff by taking points off her calls when she muted the call to cough or use an inhaler; (4) Harmon harassed Plaintiff by yelling across the hallway that she was rude; and (5) Harmon harassed Plaintiff by standing behind her in the bathroom and staring at her in the mirror. (Am. Compl. at 3–4, 8, 10–11, 26.) Defendant argues this claim must be dismissed for the conduct at issue was not related to her disability and was not sufficiently severe or pervasive.

According to the Sixth Circuit:

> In order to establish a claim of harassment under the ADA, [42 U.S.C. § 12101 et seq.,] a plaintiff must establish that (1) she was disabled; (2) she was subject to unwelcome harassment; (3) the harassment was based on her disability; (4) the harassment unreasonably interfered with her work performance; and (5) the defendant either knew or should have known about that harassment and failed to take corrective measures.

*Handshoe v. Mercy Ctr.*, 34 F. App'x 441, 448 (6th Cir. 2002); *see Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993); *Crawford v. Medina General Hosp.*, 96 F.3d 830, 834 (6th Cir. 1996) (Title VII elements applied to other discrimination claims). On a motion to dismiss, "Plaintiff [need not] plead 'specific facts establishing a prima facie case of [employment] discrimination'; rather, her complaint 'must contain only a short and plain statement of the claim showing that [she] is entitled to relief.'" *Primm v. Tenn. Dep't of Human Servs.*, No. 16-6837, 2017 U.S. App. LEXIS 15779, at *3–4 (6th Cir. Aug. 17, 2017) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002)).

"[T]he alleged harassment [must be] sufficiently severe and pervasive to alter the conditions of [the plaintiff's] employment and create an abusive working environment." *Id.* "Simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in terms and conditions of employment." *Lindsey v. Whirlpool, Corp.*, 295 F. App'x 758, 766 (6th Cir. 2008) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 786 (1998)).

In liberally construing the Amended Complaint, because it was filed pro se, it appears Plaintiff is bringing this claim under both the ADA and Ohio revised Code § 4112.02. "In deciding cases under Ohio Rev[ised] Code § 4112.02, the Ohio Supreme Court has encouraged courts to look to the ADA for guidance in the interpretation of Ohio's prohibition on disability discrimination." *Tuttle v. Oelher,* No. 1:08-cv-288, 2011 U.S. Dist. LEXIS 35609, at *16–17 (N.D. Ohio Mar. 31, 2011) (citing *City of Columbus Civil Serv. Comm'n v. McGlone*, 697 N.E.2d 204 (Ohio 1998)). "Consequently, both the ADA and the state law claim should therefore be analyzed using ADA case law for guidance." *Id.*; *see also Brenneman v. MedCentral Health Sys.*, 366 F.3d 412, 418 (6th Cir. 2004) ("Because neither party has argued that an action for handicap

discrimination under Ohio law entails a different legal analysis than that for disability discrimination under the ADA, and because Ohio case law tends to suggest that it entails the same legal analysis than that under the ADA, we will analyze the plaintiff's state and federal claims . . . solely under the ADA."); *Martin v. Barnesville Exempted Vill. Sch. Dist. Bd. of Educ.*, 209 F.3d 931, 934 n.2 (6th Cir. 2000) ("Both federal and Ohio disability discrimination actions require the same analysis.").

Defendants allege Plaintiff failed to plead facts which could raise an inference that the harassment was based on her disability or was severe and pervasive.

### 1. Harassment Based on Disability

Sixth Circuit precedent requires courts to "distinguish between harassment and discriminatory harassment." *Trepka v. Bd. of the Cleveland City Sch. Dist.*, 28 F. App'x 455, 461 (6th Cir 2002). "[A]n employee must demonstrate the allegedly harassing conduct was motivated by a bias towards the employee's protected class." *Id.* (citing *Faragher*, 524 U.S. at 778). Defendants argue there are no facts in the Complaint that with inferences could put them on notice that the harassment Plaintiff claims was based on her disability.

Plaintiff alleges on May 18, 2018, Harmon yelled at her from across the hallway and called her rude. (Am. Compl. at 11.) She stated the "outburst was both aggressive and startling . . . it made [her] jump." (*Id.* at 11–12.) She alleged this occurred because Plaintiff "failed to say good morning before going into her office." (*Id.* at 11.) There is no allegation here the alleged harassment occurred because of her disability. There is only evidence that it occurred because Harmon believed Plaintiff was "rude." (*Id.*)

Similarly, Plaintiff alleges that on July 12, 2018, Harmon stood behind Plaintiff in the bathroom in front of the mirror and stared at her. (Am. Compl. at 26.) Plaintiff states in her

complaint this was "blatant harassment" and "sexual harassment," however, she does not allege it was based on her disability. (*Id.*)

Plaintiff also alleged that in early December of 2017, Richardson "advised [her] to pull her mouthpiece up!" (*Id.* at 4.) In Plaintiff's complaint, Plaintiff refers to this as Richardson "coach[ing]" her in response to a previous incident with Harmon. (*Id.*) She does not allege this was based on her disability but instead based on the incident with Harmon.

In addition, Plaintiff alleges Harmon took points off her calls because of "heavy breathing." (*Id.* at 3.) This cannot be based on her disability because it was not until after this occurred that Plaintiff told her employer about her asthma. (*Id.*) Once Plaintiff told Defendants of her asthma, points were no longer taken off for "heavy breathing." (*Id.*) Thus, none of the above incidents can be said to give Defendants fair notice of the basis for her hostile work environment claim. *Primm*, 2017 U.S. App. LEXIS 15779 at *5–6.

This leaves Plaintiff with only one incident where Harmon allegedly took points off from Plaintiff's call based on her need to mute her call to cough and use her inhaler.[4] Plaintiff states that "[t]his call would otherwise have been scored at 100% . . . but for discrimination against disability." (Am. Compl. at 10.) This is sufficient to allege it was based on her disability.

### 2. Harassment That Unreasonably Interferes with Work Performance

In order for conduct to unreasonably interfere with a person's work performance, both an objective and a subjective test must be met. *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 464 (6th Cir. 2000) (citing *Harris*, 510 U.S. at 21–22). "A hostile work environment occurs 'when the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently

---

[4] Plaintiff also mentions an incident with Gannon, not named as a defendant, where he was "aggressive" in asking Plaintiff a question. (Am. Compl. at 8–9.) It is not clear whether Plaintiff is asserting this was harassment, but regardless, she does not allege it was based on her disability but alleges it occurred because "he is abrasive." (*Id.*)

severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Id.* at 463 (citing *Harris*, 510 U.S. at 21). In making this determination, courts must consider the totality of the circumstances and evaluate the "work environment as a whole," rather than "individual acts of hostility." *Id.* As part of this determination courts should consider: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonable interfered with an employee's work performance." *Harris*, 510 U.S. at 23.

Defendants argue that Plaintiff's hostile work environment claim fails because the conduct is not sufficiently severe or pervasive to alter the terms of conditions of her employment." (Defs.' Mot. Dismiss at 9.) This Court agrees.

Plaintiff has only alleged one incident, which is not severe, did not threaten physical harm, and did not affect her work performance. Importantly, isolated incidents, such as this single incident, unless extremely serious, which this incident was not, will not amount to a hostile work environment. *Hafford v. Seidner*, 183 F.3d 506, 513 (6th Cir. 1998) (citing *Faragher*, 524 U.S. at 786).) Plaintiff alleges she ignored the behavior. (Am. Compl. at 11.)

This alleged conduct is much less severe than conduct which courts have found not severe enough to form the basis for a hostile work environment claim. *See e.g., Denczak v. Ford Motor Co.*, 407 F. Supp. 2d 880, 893 (N.D Ohio 2005) (finding no hostile work environment when plaintiff, whom had underwent gallbladder surgery and required frequent bathroom breaks, was subjected to complaints by his superiors about his frequent bathroom usage); *Reed v. Metro Gov't of Nashville & Davidson Cty*, 286 F. App'x 251, 254–55 (6th Cir. 2008) (finding a supervisor's remark about aging at a costume party as well as emails circulated around the office about the plaintiff's aging, not sufficiently severe to create a hostile work environment); *cf. Harris*, 510 U.S.

at 19 (finding a hostile work environment when a male supervisor made derogatory remarks about females' intelligence, made female employees reach into his pants pockets, and threw things on the ground and asked female employees to pick them up); *William v. GMC*, 187 F.3d 552, 562 (6th Cir. 1999) (finding a hostile work environment when a co-worker called the plaintiff a slut, made overt sexual references, touched her inappropriately, and played practice jokes on her).

The Court acknowledges that the conduct Plaintiff alleges was harassment was likely offensive to her. The "ADA[, however] is not a general civility code for the American workplace." *Rafferty v. Giant Eagle Mkts, Inc.*, No. 2:17-cv-617, 2018 U.S. Dist. LEXIS 186643, at *23 (S.D. Ohio Oct. 31, 2018) (internal citations omitted). "It is not meant to prevent every comment that an employee might find offensive." *Id.* Plaintiff cannot be said to have given Defendants fair notice as to how the harassment was sufficiently severe or pervasive so as to underly a claim for hostile work environment. *See Roper v. City of Cincinnati Fire Dep't*, No. 1:18—cv-901, 2019 U.S. Dist. LEXIS 158459, at *7–8 (S.D. Ohio July 12, 2019) (finding a single, isolated instance of alleged harassment not enough to give rise to an inference of a hostile work environment).

Defendants' motion to dismiss Plaintiff's hostile work environment claim is GRANTED.

### E. Wrongful Termination

Plaintiff alleges Defendants wrongfully terminated her. (Am. Compl. at 37.) Construing the pro se complaint liberally, she claims this termination was discrimination based on her disability in violation of the ADA and Ohio Revised Code Section 4112.02.[5] (*Id.* at 2, 37.)

The ADA protects individuals who have disabilities and those who oppose any act made unlawful by the act or participate in an investigation or proceeding under the act. *See* 42 U.S.C.

---

[5] Plaintiff also cites Ohio Revised Code § 5107.26 which applies to the Ohio Works First Program. Plaintiff has not alleged she participates in this program and thus, this section is inapplicable to her claim.

§§ 122112(a), 12203(a). In order to establish a prima facie case of discriminatory discharge under the ADA, the plaintiff must show:

> 1) that he is disabled; 2) that he is otherwise qualified for his previous position with [the defendant] with or without reasonable accommodations; 3) that he suffered an adverse employment decision; 4) that [the defendant] knew or had reason to know of his disability; and 5) that he was replaced or that his position remained open while [the defendant] looked for other applicants.

*Plant v. Morton Int'l Inc.*, 212 F.3d 929, 936 (6th Cir. 2000).

> Similarly, under Ohio Revised Code § 4112.02(A) the plaintiff must show:

> 1) That he is handicapped; 2) that [the defendant] took adverse action against him because of his handicap; and 3) that he is capable of performing the essential functions of the job in question.

*Id.* The Sixth Circuit has found Ohio case law supports courts applying the same analysis to the state law claim as it applies to the ADA claim. *Id.* (citing *City of Columbus*, 697 N.E.2d at 106–07; *Greater Cleveland Reg'l Transit Auth. v. Ohio Civil Rights Comm'n*, 567 N.E.2d 1325, 1328 (Ohio Ct. App. 1989)). As in a hostile- work environment claim, the plaintiff need only give the defendant fair notice of the claim and need not make out the prima facie case. *Primm*, 2017 U.S. App. LEXIS 15779 at *7.

"The alleged discrimination must have been a 'but-for' cause of the adverse employment action." *Hunt v. Monro Muffler Brake Inc.*, 769 F. App'x 253, 256 (6th Cir. 2019); *see also Lewis v. Humboldt Acquisition Corp. Inc.*, 681 F.3d 312, 321 (6th Cir. 2012) (en banc). Defendants argue Plaintiff failed to allege she was terminated because of her alleged disability or engagement in protected activity. (Defs.' Mot. Dismiss at 10.)

Plaintiff states she was terminated "for failure to cooperate with an investigation." (Am. Compl. at 37.) Specifically, she alleges, "[t]he Defendants as a whole did terminate [] Plaintiff's [sic] employment for refusing to speak with [HealthScope's] in-house counsel [Moore]." (*Id.* at

38.) Defendants argue this concedes that her termination was not based on her disability or her participation in any protected conduct. The Court agrees. Plaintiff's Amended Complaint, by its clear language, states the reason she was fired was her failure to speak with Moore. She does not allege anywhere in the Amended Complaint that her termination had anything to do with her disability or her filed complaints.

Plaintiff, in her response, alludes to the fact that her termination was linked to the complaints she filed on account of the alleged harassment and discrimination on the basis of her disability. This contention, however, is not alleged in the Amended Complaint, even construing it liberally. A motion to dismiss "tests the sufficiency of the complaint, not additional facts that are set forth in response to a motion to dismiss." *El Hallani v. Huntington Nat'l Bank*, No. 13-cv-12983, 2014 U.S. Dist. LEXIS 72887, at *19 (E.D. Mich. May 29, 2014) (rev'd on other grounds). Importantly, "[i]t is a basic principle that the complaint may not be amended by the briefs in opposition to a motion to dismiss, nor can it be amended by the briefs on appeal." *Veeder v. Tri-Cap*, No. 17-cv-11690, 2018 U.S. Dist. LEXIS 219361, at *26 n.8 (E.D. Mich. Dec. 13, 2018) (citing *Thomason v. Nachtrieb*, 888 F.2d 1202, 1205 (7th Cir. 1989)); *El-Hallani*, 2014 U.S. Dist. LEXIS 72887 at *19–20 (asserting the same); *Strayhorn v. Wyeth Pharms., Inc.*, 737 F.3d 378, 399 (6th Cir. 2013) (noting that the appropriate method to add new factual allegations is not via a brief but by filing an amended complaint) (internal citations omitted); *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 328–29 (6th Cir. 2006) (noting that on a motion to dismiss the "court should not assume facts that were not pled" and citing cases holding amending the complaint is the proper method for adding factual allegations). Thus, the proper method for Plaintiff to amend her Complaint was not through her responsive brief.

Further, even if the Court construed her claim to include the new allegation that she was terminated on the basis of her disability and the complaints she filed, this does not revive her claim. Plaintiff still alleges in her response that at least one of the reasons she was terminated was her refusal to speak with Moore. (*See* Pl.'s Resp. at 4 ("Moore embarrassed [Plaintiff] when he had her terminated from her fulltime position for invoking [sic] her Fifth Amendment right.").) Thus, but-for her disability and her complaints she still would have been terminated. Thus, Plaintiff has not put Defendants on notice with facts which could combine with inferences to support a claim for wrongful discharge in retaliation for protected conduct.

Defendants' motion to dismiss Plaintiff's wrongful termination claim is GRANTED. The Court need not address Defendants motion to dismiss for improper service under Rule 12(b)(5) for each claim is dismissed for failure to state a claim under 12(b)(6). As such, the Court also need not address Plaintiff's additional filing on February 27, 2020, containing "documentation in support of [Plaintiff's] response to [Healthscope's] motion to dismiss" regarding the issue of service of process. (ECF No. 8.)

## IV.

For the reasons set forth above, Defendants' Motion to Dismiss (ECF No. 4) is **GRANTED**. The Clerk is **DIRECTED** to close this case.

**IT IS SO ORDERED.**

7-18-2020
**DATE**

**EDMUND A. SARGUS, JR.
UNITED STATES DISTRICT JUDGE**